# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES BLACK, ET AL.,<br>    Plaintiffs | CIVIL ACTION |
| VERSUS | NO. 16-2708 |
| DMNO, LLC, ET AL.,<br>    Defendants | SECTION: "E" |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by the named Plaintiffs to this class action, Mark Gandy; Ashley Newton; David Pierce-Feith; Austin Lane; Patrice Jones; Erin Lawrence; Zachary Adams; Asaria Crittenden; Elizabeth Kuzmovich; Larry Hunt, Jr.; and Carlos Ayestas.[1] Defendants DMNO, LLC; Doron Moshe Rebi-Chia; Itai Ben Eli; and Itamar Levy oppose the motion.[2] For the following reasons, the Court **GRANTS** Plaintiffs' motion in part and **DENIES** Plaintiffs' motion in part.[3]

## BACKGROUND

Plaintiffs, all former servers of DMNO, LLC, d/b/a Doris Metropolitan ("Doris"), bring this suit pursuant to the Fair Labor Standards Act ("FLSA") seeking to recover unpaid minimum wages and tips they allege were misappropriated as a result of an invalid tip

---

[1] R. Doc. 51. These Plaintiffs represent a conditionally certified class, defined as: (1) those "employed as a bartender and paid as an hourly employee at Doris Metropolitan within the past three years [who] were not paid overtime" and/or (2) those "employed as a server or assistant server at Doris Metropolitan, paid less than $7.25 per hour in direct cash wages (e.g., you were paid $2.13/hour), and . . . were required to tip out a portion of [their] tips to managers and/or owners/managers." R. Doc. 31 at 2. During the pre-trial conference of this matter, the Parties represented that they had reached an agreement with respect to named Plaintiff Shannon McSwain's claims. R. Doc. 87 at 2. Ms. McSwain is the only named Plaintiff who Defendants employed as a bartender during the statutory period. The settlement of this claim was approved on May 21, 2018. R. Doc. 98. As Ms. McSwain's claim has been settled, and no other bartenders opted-in to the class on or before July 31, 2017, the conditionally certified class is hereby amended to exclude bartenders.
[2] R. Doc. 69.
[3] During the pre-trial conference of this matter, the Court ruled on Defendants' motion for partial summary judgment. *See* R. Doc. 87 at 2. The Court granted Defendants' motion dismissing Plaintiff Jeffery Blair's claims, as Plaintiffs did not oppose the motion, and Mr. Blair did not sign or file a consent form to join the collective action on or before July 31, 2017, the date on which the opt-in period for the class expired. *See* R. Doc. 60 at 1; R. Doc. 35.

1

pooling arrangement. According to Plaintiffs, because Doris' tip pooling scheme was invalid, Doris was not entitled to take a so-called "tip credit" under the FLSA, and, as a result, was required to compensate Plaintiffs at the full minimum wage rate for all hours worked.

Plaintiffs allege that, at all times relevant to this litigation, Doris used a tip pooling system, whereby all tips and service charges generated at the conclusion of each shift were combined into one fund and redistributed to employees based on a percentage allocation. From this pool, servers received sixty-five percent of the funds, server assistants received twenty-five percent of the funds, and "service captains," received ten percent of the funds. Plaintiffs allege the service captains were in reality managers and that Defendants subsidized the managers' salaries by allotting ten percent of the tip pool to them.[4] Plaintiffs also allege that when Doris' general manager, Defendant Itai Ben Eli, worked as a service captain, ten percent of the tip pool was retained by the restaurant in violation of the FLSA.

Plaintiffs seek summary judgment that: (1) Doris' having retained ten percent of the tip pool on shifts during which Mr. Eli acted as service captain invalidates the entire tip pooling scheme for every shift during the relevant time period; and (2) Defendants are not entitled to an offset of their FLSA wage liability through the use of compulsory service charges.

## ANALYSIS

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "An issue is material if its resolution could affect the outcome of the action."[6] When

---

[4] Although not the subject of the instant motion, Plaintiffs also allege Defendants are not eligible for a tip credit, as ten percent of the tip pool at Doris was allotted to service captains at the end of each shift. Plaintiffs submit that because the service captains—who Plaintiffs maintain are actually restaurant managers—are not a position in which a person "customarily and regularly retain[s] tips," Defendants unlawfully claimed a tip credit in violation of the FLSA. Plaintiffs concede that material issues of fact with respect to this claim are disputed.
[5] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[6] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[7] All reasonable inferences are drawn in favor of the non-moving party.[8] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[9]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[10] If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, to satisfy Federal Rule of Civil Procedure 56's burden, the moving party must do one of two things: it "may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."[11] When the moving party chooses the latter option it

> must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record.[12]

If the moving party fails to carry this burden, the motion must be denied.

---

[7] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[8] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[9] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[10] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).
[11] *Celotex*, 477 U.S. at 331.
[12] *Id.* (internal citation omitted).

If the moving party successfully carries its burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[13] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[14] "[U]nsubstantiated assertions are not competent summary judgment evidence."[15] Rather, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[16]

## I. Defendants are not entitled to a tip credit for shifts during which a portion of the tip pool was retained in Doris' operating account

Under the FLSA, an employer may pay an employee $2.13/hour, instead of the national minimum wage of $7.25/hour so long as: (1) the employee being paid less than minimum wage also earns tips;[17] (2) the total amount of tips earned equals or exceeds $5.12/hour;[18] and (3) "all tips received by [the tipped] employee have been retained by that employee."[19] As an exception to the third requirement, the FLSA permits "the pooling of tips among employees who customarily and regularly receive tips."[20] However, "[i]f an

---

[13] *Id.* at 322–25.
[14] *Id.* at 332–33.
[15] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).
[16] *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).
[17] 29 U.S.C. § 203(m); *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015) (citing *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 874 (8th Cir. 2011)).
[18] 29 U.S.C. §§ 203 (m)(2), 206(a)(1); 29 C.F.R. §§ 531.52, 531.59. Five dollars and twelve cents per hour is the difference between the national minimum wage of seven dollars and twenty-five cents per hour and two dollars and thirteen cents per hour.
[19] *Fast*, 638 F.3d at 874.
[20] *Montano*, 800 F.3d at 188–89.

employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not take a tip credit, and must compensate its employees at the full minimum wage rate.[21] "Defendants bear the burden of establishing their entitlement to the tip credit."[22]

Plaintiffs point out that ten percent of the tip pool was retained in Doris' operating account when Mr. Eli, Doris' general manager, was listed as the service captain on close out sheets at the end of a shift. Because Mr. Eli is not an "employee[] who customarily and regularly receive[s] tips,"[23] Plaintiffs submit Doris' tip pooling scheme violates the FLSA, rendering Doris ineligible for a tip credit for all shifts worked during the relevant time period. As a result, Plaintiffs argue Defendants violated the FLSA by failing to compensate them at $7.25 per hour for all hours worked during the entire statutory period.

There is no dispute that Plaintiffs, as servers, are "tipped employees."[24] It is also undisputed that Plaintiffs did not retain all of their tips, and that, instead, Doris required them to pool and share with other servers, server assistants, and service captains.[25] Plaintiffs do not challenge the requirement that they share tips with other servers and server assistants.[26] It is undisputed that Mr. Eli, as Doris' general manager, does not "customarily and regularly receive tips."[27] It is also undisputed that, at least on a few occasions when Mr. Eli acted as service captain, tips usually allocated to the service captain

---

[21] *Id.* at 189.
[22] *Id.* (citing *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (holding that a restaurant "had the burden to prove it operated a legal tip pool"); *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4 (6th Cir. 1999) ("[A]n employer who invokes a statutory exemption from minimum wage liability bears the burden of proving its qualification for that exemption."); S. Rep. No. 93–690, at 43 (1974) ("[T]he original intent of Congress [is] to place on the employer the burden of proving ... the amount of tip credit, if any, which such employer is entitled to claim . . . .")).
[23] *Montano*, 800 F.3d at 188–89.
[24] R. Doc. 51-1 ¶ 5; R. Doc. 69-2 at ¶ 5.
[25] R. Doc. 51-1 ¶ 7; R. Doc. 69-2 at ¶ 7.
[26] R. Doc. 51-2 at 4.
[27] 29 U.S.C. § 203(m).

were not distributed and instead were retained in Doris' operating account.[28] Plaintiffs contend that, because ten percent of the tip pool was retained by Doris when Mr. Eli acted as the service captain, Doris was not entitled to a tip credit for the entire statutory period.

In support of their motion for summary judgment on this issue, Plaintiffs point to a tip sheet from February 15, 2015 that shows $15.80 was subtracted from the tips for "Itai," and deposition testimony from (1) Mr. Eli; (2) Dontay Kinchen, a server at Doris who was a former service captain; (3) Tiffanie Campbell, office manager at Doris; (4) Melissa Rogers, current general manager at Doris who was formerly a floor manager; and (5) Itamar Levy, who owns and operates Doris, confirming that the name listed on the top of each tip out sheet was the service captain for that shift[29] and the fact that the tips deducted from servers and intended for service captains on the shifts for which Mr. Eli was listed as the service captain were not distributed but instead remained in Doris' operating account.[30] Plaintiffs submit that, based on these undisputed facts, they are entitled to judgment as a matter of law that Defendants were not entitled to a tip credit for the entire statutory period.[31]

In their opposition, Defendants point out that Plaintiffs' assertion that Mr. Eli participated in the tip pool is "based on a single tip sheet."[32] Although they admit that an FLSA violation occurred during the shifts on which Mr. Eli worked as a service captain and ten percent of the tips generated during that shift were retained in Doris' operating account,[33] they submit these isolated violations do not serve to invalidate Defendants' tip

---

[28] R. Doc. 69-2 at ¶¶ 10, 12.
[29] R. Doc. 51-2 at 4–5.
[30] R. Doc. 51-6 at 11:2–11; 14:2–20.
[31] R. Doc. 51-2 at 5–6.
[32] R. Doc. 59 at 4.
[33] R. Doc. 92 at 3 ("Defendants acknowledge that a FLSA violation occurred when Mr. Ben Eli participated in the tip pool and his share was deposited in the Company's operating account.").

pooling scheme for all shifts worked during the entire statutory period. Rather, they contend the tip pooling scheme is only invalidated for the shifts during which Mr. Eli acted as the service captain and the tips normally set aside for the service captain were retained in Doris' operating account. The Court agrees with Defendants.

Although the Court's research did not reveal any controlling case law directly addressing the issue,[34] several cases discussing the effect of a sporadic FLSA violation suggest that, when a violation of § 203(m) is infrequent, the defendants' liability is limited to those instances in which the FLSA violation occurred.[35]

In *Myers v. Copper Cellar Corp.*, for example, the Sixth Circuit considered whether the defendant restaurant's occasional use of a "salad preparer," who was included in the tip pooling scheme, violated the FLSA.[36] The court concluded that, because the salad preparers were not employees who customarily and regularly received tips, their inclusion in the restaurant's tip pool violated the FLSA. The Sixth Circuit explained:

> *during the work shifts in which salad mixers were included within the tip pool*, the pooling scheme was illegal; thus each employee who was compelled to contribute to such a tip pool was statutorily entitled to payment of the full $4.25 per hour minimum wage for all work time logged *during those shifts.*[37]

---

[34] On May 3, 2018, the Court ordered the parties to provide further briefing on the issue of how frequently an alleged FLSA violation must have occurred—in this case, allowing a portion of the servers' tips to be retained in Doris' operating account—for the Court to find Defendants were not entitled to a tip credit for the entirety of the three year period at issue. R. Doc. 87. The parties' research did not reveal any cases directly on point. *See* R. Docs. 88, 92.

[35] *See, e.g.*, *Myers*, 192 F.3d at 550–51; *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 468 (S.D.N.Y. 2015); *Bernal v. Vankar Enters., Inc.*, 579 F. Supp. 2d 804, 810 (W.D. Tex. 2008). In a typical case in which a court invalidates a defendant's claim to a tip credit, the court must evaluate whether the defendant's standard tip pooling arrangement is invalid. For example, in *Montano*, 800 F.3d at 187, the defendant restaurant's tip pool required that "[a]ll participants in the tip pool received a percentage of the station's tips except for the coffeeman, who received a fixed ten dollars from each station each shift." *Id.* The plaintiffs challenged the defendants' tip pooling scheme on the basis of their having to share tips with the coffeeman; thus, "the narrow issue [wa]s whether the coffeeman was an employee who 'customarily and regularly receive[d] tips.'" *Id.* at 189. If the court answered the question in the affirmative, the defendants would not be entitled to the tip credit, as the servers were *always* required to share their tips with the coffeemen. In this case, however, servers' tips were allotted to Mr. Eli only sporadically, making this case an atypical one.

[36] 192 F.3d at 550–51.

[37] *Id.* (emphasis added).

Other courts have described the effect of a defendant's sporadic FLSA violation using similarly limiting language. In *Bernal v. Vankar Enterprises, Inc.*,[38] the U.S. District Court for the Western District of Texas found the defendant had unlawfully claimed a tip credit and concluded that "[*t*]*o the extent* Plaintiffs were not permitted to retain their tips to pay for shortages and unpaid tabs, Defendants disqualified themselves from taking advantage of the FLSA tip credit provisions."[39] Similarly, in *Salinas v. Starjem Restaurant Corp.*,[40] the U.S. District Court for the Southern District of New York held that the occasional inclusion of coffee preparers in the defendant restaurant's tip pooling scheme violated the FLSA, explaining:

> Defendants are, therefore, liable for unlawfully: (1) requiring Plaintiffs to share tips with non-service employees *when they worked as bussers, runners, barbacks, or the unassisted coffee preparer* (i.e., in tip-eligible positions); and (2) taking the tip credit against Plaintiffs' wages *when they worked as stockers or the coffee preparer assisted by the coffee helper.*[41]

Thus, as a matter of law, the Court concludes Doris' liability for payment of the minimum wage based on Mr. Eli's occasional inclusion in the tip pooling scheme is limited to those shifts during which Mr. Eli acted as service caption and ten percent of the tip pool was retained in Doris' operating account.[42]

As a result, the Court **GRANTS** Plaintiffs' motion for summary judgment that Defendants violated the FLSA when Mr. Eli acted as service captain and Doris retained

---

[38] 579 F. Supp. 2d at 810.
[39] *Id.* (emphasis added).
[40] 123 F. Supp. 3d at 468.
[41] *Id.* (emphasis added).
[42] *See Myers*, 192 F.3d at 550–51; *Salinas*, 123 F. Supp. 3d at 468; *Bernal*, 579 F. Supp. 2d at 810; *cf. Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) ("Because Perry's offset *always* exceeded the direct costs required to convert credit card tips to cash, as contemplated in § 203(m) and interpreted by the Sixth Circuit, we hold that Perry's 3.25% offset violated § 203(m) of the FLSA, and therefore Perry's must be divested of its statutory tip credit for the relevant time period." (emphasis in original)). *But see Whitehead v. Hidden Tavern, Inc.* 765 F. Supp. 2d 878, 882–83 (W.D. Tex. 2011) (holding that because the owner "worked as a bartender on Friday nights and participated in a tip pool with one of the plaintiffs for six months," the defendant restaurant was "disqualified from its ability to utilize the tip credit provision").

ten percent of the tip pool its operating account, but **DENIES** the motion to the extent Plaintiffs seek to invalidate Doris' tip pooling scheme for the entire statutory period based on these sporadic violations. Instead, Doris is responsible for paying Plaintiffs minimum wage for the hours worked during shifts on which Mr. Eli acted as service captain and ten percent of the tip pool was retained in Doris' operating account.[43]

## II. Defendants are not entitled to an offset to their FLSA wage liability through the use of compulsory service charges

Under the Department of Labor's regulations, "service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the [FLSA's] monetary requirements."[44] Before an employer may count "service charges" as an offset to its minimum wage liability, however, "at least two prerequisites" must be met.[45] "The service charge 'must have been included in the establishment's gross receipts,' and it must have been 'distributed by the employer to its employees.'"[46]

Plaintiffs seek summary judgment that Defendants "cannot rely on mandatory gratuities retained by Plaintiff to satisfy their minimum wage obligations because the mandatory gratuities did not become a part of DMNO, LLC's gross receipts and therefore do not qualify as service charges under the FLSA."[47] They contend "Defendants made no differentiation between voluntary tips and mandatory gratuities, failed to treat mandatory

---

[43] This amount must be established at the trial.
[44] 29 C.F.R. § 531.55(b).
[45] *McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235, 246 (4th Cir. 2016).
[46] *Id.* (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 929 (S.D.N.Y. 2013); 29 C.F.R. § 531.55(b)).
[47] R. Doc. 51-2 at 6.

9

gratuities as service charges for tax purposes and cannot produce documents to meet the requirements necessary to establish their offset to minimum wage requirements."[48]

In response, Defendants state they do not argue mandatory service charges may be used to satisfy their minimum wage liability,[49] and admit that "[v]oluntary tips and automatic gratuities were added together and therefore indistinguishable on the close out sheets utilized by [Doris]."[50] As a result, the Court **GRANTS** Plaintiffs' motion with respect to this issue, as unopposed.

## CONCLUSION

**IT IS ORDERED** that the motion for partial summary judgment by named Plaintiffs Mark Gandy; Ashley Newton; David Pierce-Feith; Austin Lane; Patrice Jones; Erin Lawrence; Zachary Adams; Asaria Crittenden; Elizabeth Kuzmovich; Larry Hunt, Jr.; and Carlos Ayestas be hereby **GRANTED** in part and **DENIED** in part.

The Court **GRANTS** Plaintiffs' motion for summary judgment that Defendants violated the FLSA when Mr. Eli acted as service captain and Doris retained ten percent of the tip pool its operating account, but **DENIES** the motion to the extent Plaintiffs seek to invalidate Doris' tip pooling scheme for the entire statutory period based on these sporadic violations.

The Court **GRANTS** Plaintiffs summary judgment that Defendants are not entitled to an offset of their FLSA wage liability through the use of compulsory service charges.

**New Orleans, Louisiana, this 21st day of May, 2018.**

                                                      **SUSIE MORGAN**
                                      **UNITED STATES DISTRICT JUDGE**

---

[48] *Id.* at 8–9.
[49] R. Doc. 59 at 6.
[50] R. Doc. 51-1 at ¶ 17; R. Doc. 69-2 at ¶ 17.